*156 OPINION of the court, by
Ch. J. Boyee.
This is á contest for land, under adverse claims. The ap-_Pe^antsi who were defendants in the court below, hav-*nS the elder patent, upon which they exclusively rely, it will only be necessary for us to investigate the validi *157 ty of the entry under which the complainants derive their claim. It is in the following words :
The military furveys not notorious, and the certificates of furvey not containing any cer. tain defcriptipil by reference to known & pre-cife objeéts, cannot uphold the dependant entry.
Being called for bythe names of geweral Lew. is and general Stephens, Sc no proof that An* drew Lewis & Adam Stephens were generally kaown by thofe titles in the vicinity of thofe furveys, the aL lufion to thofe furveys was not fufficient.
“ May 12th, 1780 — Uriel Mallory enters 2000 acres upon a treasury warrant, on the south side of Elkhorn, below the main fork, between the Lines of genera! Lewis and general Stephens, and to run along Stephens’s line towards the Kentucky for quantity.”
Elkhorn and its main forks, by the names af the north and south forks of Elkhorn, are proven to have been well known by these respective appellationsvat and pri- or to the date of this entry ; and two military surveys, the one in the name of Andrew Lewis and the Other in the name of Adam Stephens, are shewn to have been made in 1774, the lines “of which are claimed as those intended to be described by this entry. These two surveys are so made as to come neavly into contact with each other on the south fork of Elkhorn, ata point some distance above its confluence with the north fork, and their lines diverging from each other in ⅜ southern direction, present an area in a triangular form on the south side of the south fork of Elkhorn, on which the entry in question has been surveyed.
The call for “ the south side of Elkhorn, below the main fork,” is but general description, tending to indicate in what part of the country the locative objects might be found. ■ But as this call would equally fit any point on the south side, of Elkhorn below the main forks, and as that stream from thence to its mouth is of considerable length, it is obvious were the call correct in fact it would afford very little aid in support of the entry. It is, however, apparent from the preceditig state.of the case, that the call is false and delusive. The objects claimed as those intended to fix the location, are not found on the south side of Elkhorn below the main forks, where a subsequent inquirer would naturally have been led to search for them, but on the south fork some distance above its junction with the north fork. So far, therefore, is this call from affording any strength or support tq the entry, that it rather weakens and prejudices the claim.
The incorrectness and fallacy of this call, however, would not have vitiated the entry, if the objects of location had been notorious and described with sufficient aptitude and precision. But unfortunately this does not *158 appear to be th® case. It cannot be pretended that thq lines of Lewis and Stephens had at the date of this en-¡ try, anjy thing like a general notoriety nj their vicinity. Upon this point there is a total defect of proof.
But it is contended that the necessity of proof of this sort is superseded by the description contained in the certificates of Lewis and Stephens’s surveys. Forthese being of record, and the lines thereof called for in Mallory’s entry ; thej| became, as it is urged, a component part of the description of his location, to which a snb-sequent adventurer was bound to advert, and when he did so it is inferred that he would be guided thereby with sufficient certainty and precision to the place of location. We do not conceive it necessary its this case to determine whether it was incumbent upon a subsequent locator to take notice of the certificates of these surveys as a part of the description of Mallorv’s entry ; because we are of opinion that the description contained in those fprtiikates is not sufficiently precise and certain to give validity to the entry. Both these surveys call to lie on Elkhorn creek. If by this be meant the main stream below the confluence of the north and south forks, the call as it respects Lewis’s survey, is utterly untrue : for. that is in fact wholly on the south fork, with its lower boundary some distance above the junction ofothe two forks. But if by Elkhorn creek be understood the whole stream, as well above as below the confluence of the two forks, then the call being equally applicable to any part of the stream from its spurce to its mouth, is evidently too vague and indefinite to impart validity to an entry depending upon such a call, and there is nothing in the subsequent delineation' of' the boundaries of the survey which would tend to correct the deceptiveness or remove the vagueness of this call. For the only additional description to be found in the specificátion of its boundaries, consists of marked trees in themselves naturally Obscure, and the crossing of a buffalo road, a thing common in the country and equally to be found oct every part of this stream,
#The same objections apply, perhaps not with equal, ⅜⅛ considerable force, to Stephens’s survey. That is Found tobe in part below the junction of the main fork® of the stream, but with its upper boundary on the south fork t so that if by Elkhorn creek, in this certificate qf *159 survey, be understood the main stream below the forks, the call would not be entirely false. Still, however, it would be vague, in as much as it would leave the whole stream from the forks to its mouth to be explored in order to find the position of the survey. Nor is the specification of the boundaries cf this survey better calculated than those of the former fo remove the vagueness attached to the call. The call to bjjgin “ in the fork of a branch of Elkhorn creek,” ¿which was principally relied on for this purpose, cannot by any rational construction have such effect. That call istqually applicable to any branch emptying into Elkhorn, and plainly contains no indication that the beginning might be found where in fact it is, in a fork of the south fork of Elkhorn.
So vague and delusive, - therefore, is the description contained in these surveys, that it is manifest the entry in question can derive no certainty of precision from them. .⅜>.
But there is a still farther objection to this entry, ¿rising from the inaptitude of the description it has given of these surveys. These surveys are in the names of Andrew Lewis and Adam Stephens ; but the call is for the lines of general Lewis and general Stephens. It is true that there is proof in the ca&se that Andrew Lewis and Adam Stephens were generally known in the back counties of Virginia, ar.d by many people iii Kentucky, by the appellation of general Lewis and general Stephens ; but tjlsre is no testimony to shew that they wer¿ so known by The generality of those conversant in the vicinity of the. ■entry in question ; and it is clear that a descriptid^fouched⅝ language which, though intelligible to many at a distance^ was not so to a majority of (hose conversanty-fn the fieighborhood of the location, would not be sti&cient to give to a subsequent locator the rtquisite information to enable him to locate with certainty the adjacent residuum.
We think, therefore, that the entry is not valid, and the court below erred in sustaining it.
, Decree reversed with costs.